# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**Thomas H. Sharp,**

*Plaintiff*,

**v.**                                                    **Case No.  3:04-cv-064**
                                                          **Judge Thomas M. Rose**

**Ross Aluminum Foundries Eagle Picher**

  **Industries, Inc.,** *et al.*,

*Defendants*.

---

**ENTRY AND ORDER SUSTAINING EAGLE PICHER MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD, DOC. 11, SUSTAINING DEFENDANT ROSS ALUMINUM MOTION TO DISMISS, DOC. 15, AND TERMINATING CASE.**

---

This matter is before the Court on the *Motion for Judgment on the Administrative Record* (Doc. 11) filed by Defendant Eagle Picher Hourly Plan on June 30, 2004.  The Plaintiff, Thomas H. Sharp (hereinafter "Mr. Sharp") filed a *Memorandum in Opposition to Motion of Defendant for Judgment on the Administrative Record* (Doc. 24) on October 29, 2004. Eagle Picher Hourly Plan filed a *Reply* (Doc. 25) on December 3, 2004.

This matter is also before the Court on the *Motion to Dismiss* (Doc. 15) filed by Defendant Ross Aluminum Foundries Eagle Picher Industries, Inc. (hereinafter "Ross Aluminum") on August 19, 2004, requesting that the Court dismiss Ross Aluminum Foundries Eagle Picher Industries, Inc. In response to this motion, Mr. Sharp filed a *Stipulation of Dismissal of Defendant Ross Aluminum Foundries Eagle Picher Industries, Inc.* (Doc. 26) on

December 14, 2004. Since the parties agree that the Eagle Picher Hourly Plan is the proper defendant, the motion to dismiss will be granted.

Resolution of the motion for judgment on the administrative record will require a review of the administrative record as provided by the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), 29 U.S.C. § 1132(g)(1). Subject-matter jurisdiction is proper for this action pursuant to 28 U.S.C. § 1321 and 19 U.S.C. §§ 1109(a) and 1132(e). Venue is proper because Eagle Picher Hourly Plan is administered within the District and Ross Aluminum regularly conducts business within the District. The matter is properly before this Court.

I.    FACTS AND PROCEDURAL HISTORY

A.    Facts

Eagle Picher Hourly Plan is a program by which Ross Aluminum provides its employees with disability retirement and/or retirement income. Document 1 at 2. Mr. Sharp suffers from degenerative joint disease of the hip which has resulted in a total of three hip replacements, two prior to going on disability leave with Ross Aluminum and one after. *Id.* at 3. Mr. Sharp was an employee at Ross Aluminum for twenty-two years and was placed on disability leave September 16, 1996. *Id.* at 2.

It was not until March 26, 2002 that the Social Security Administration determined Mr. Sharp to have been disabled since November 24, 1998. Mr Sharp originally applied for Social Security disability on October 24, 1996, *Sharp v. HHS*, 3:00-cv-457, doc. 9 at 1, asserting inability to work since September 13, 1996. In spite of several letters from his doctor asserting Mr. Sharp was disabled, letters which were later included in his application for disability insurance benefits, his application was denied on November 23, 1998. Sharp appealed. When the Social Security Appeals Council denied his request for review, Mr. Sharp applied to this

Court for judicial review.  On March 4, 2002, this determination was upheld.  *Sharp v. HHS*, 3:00-cv-457, Doc. 17 (Rice, C.J.).

Mr. Sharp persisted, however, filing a second application for Social Security disability benefits.  The second application was also denied, but on appeal Mr. Sharp was found to have been disabled since November 24, 1998.  This date was chosen due to the pendency of the first appeal, which at that time was unresolved.  AR.,[1] doc. 10, at 195.

Mr. Sharp claims he was hit in the hip and leg with some type of material "a couple of years" prior to a January 13, 1997 hospital admission and that this contact "knocked loose" his artificial hip while he was working at Ross Aluminum. AR., 191.  Mr. Sharp contends the incident caused him pain but the pain did not reach such a level to require his third hip surgery until around September 2002, *id.* at 190-91, by which time he had been out of Ross Aluminium's employ for nearly six years.

**B.    Procedural History**

Mr. Sharp applied for disability retirement benefits with Eagle Picher Hourly Plan.  The plan allows for disability retirement benefits when its definition of disabled is met:

> Disabled means [1] permanent and total incapacity by bodily injury or disease which [a] commenced during a period in which the Hourly Employee was performing services for an Affiliate as an Hourly Employee *and* [b] which has continued for a period of six (6) consecutive months *and* [c] which prevents the Hourly Employee from engaging in any occupation or employment for remuneration or profit, except for the purposes of rehabilitation as determined by the Committee, [2] which entitles the Hourly employee to a disability benefit under the U.S. Social Security Act, *and* [3] which was not contracted, suffered or incurred while the Hourly Employee was engaged in a criminal enterprise *or* which resulted from his habitual drunkenness or addiction to narcotics or from a self-inflicted injury or from services in the armed forces of the United States.

---

1 All citations to the Administrative Record, Doc. 10, will be referenced as AR ___.

3

AR 24 (emphases and subdivisions added).

Eagle Picher Hourly Plan found:

> (i) Mr. Sharp filed for Social Security disability benefits; (ii) he is currently receiving Social Security disability benefits *based upon a determination from the Social Security Administration that he became disabled on November 24, 1998 (a date that is clearly well after his 1997 termination date from Eagle-Picher)*; and (iii) he is appealing the decision of an Administrative Law Judge denying a determination of disability from September 13, 1996 through November 23, 1998.

*Id*. at 262 (emphasis in original). Eagle Picher Hourly Plan concluded Mr. Sharp was not disabled during his period of employment by the Ross Aluminum Division of Eagle Picher and was ineligible to receive disability benefits. *Id*.

After exhausting all administrative remedies available, Mr. Sharp has filed a complaint in the United States District Court, Southern District of Ohio Western Division (Doc. 1). Eagle Picher Hourly Plan's *Motion for Judgment on the Administrative Record* (Doc. 11) was filed before the preliminary pretrial conference.  For his part, Mr. Sharp requested judgment as a matter of law in his *Memorandum in Opposition to Motion of Defendant for Judgment on the Administrative Record* (Doc. 24).  Therefore, this Court is considering Mr. Sharp's *Memorandum in Opposition* as his motion for judgment on the administrative record.

## II.    LAW & ANALYSIS

**A.    Eagle Picher Hourly Plan's *Motion for Judgment on the Administrative Record,* Doc. 11, is sustained because the Committee's decision denying benefits was neither arbitrary nor capricious.**

**1.    Judgment as a Matter of Law Standard of Review**

When an ERISA plan administrator's decision to deny benefits is brought before a court for review, the court generally engages in *de novo* review. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989).  However, courts apply the

4

arbitrary and capricious standard when the plan administrator is given discretionary authority to determine eligibility for benefits or to construe terms of the plan. *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994). The Sixth Circuit has noted that arbitrary and capricious review is the least demanding form of judicial review of an administrative action. *See Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989). When applying arbitrary and capricious review, courts affirm administrative decisions "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome…." *Davis*, 887 F.2d at 693.

In the present case, Eagle Picher Hourly Plan expressly grants a Committee with discretion to determine employee eligibility for benefits. AR 61. The plan provides, in pertinent part,

> The Committee will have the power and the duty to take all action, and to make all decisions necessary or proper to carry out the provisions of the Plan, including, without limitation, the following: *** (g) To interpret the Plan and to resolve all questions concerning the Plan, which interpretations and resolutions will be final and conclusive and will bind all parties; (h) To determine the entitlement of, and compute the benefit to be paid to, any person applying for benefits under the Plan; *** (k) To hear and decide an Hourly Employee's or beneficiary's appeal from a decision of the Committee or a decision of anyone to whom the Committee has delegated authority to make decisions under the Plan.

*Id*. at 62. Thus, Eagle Picher Hourly Plan affords the Committee discretion in determining employees' claims for benefits and this Court will use the arbitrary and capricious standard upon review of the administrative record. Consequently, since the instant plan gives the plan administrator discretionary authority to determine eligibility for benefits, this Court will affirm the award, even if Mr. Sharp demonstrated he was disabled while actively employed by Ross Aluminum, as long as the plan administrator's decision was not arbitrary and capricious.

5

However, Mr. Sharp asserts Eagle Picher Hourly Plan operates under a conflict of interest and the conflict of interest should be taken into consideration upon review of the administrator's decision. *Memorandum in Opposition to Judgment on the Administrative Record* (Doc. 24) at 3-4. Mr. Sharp claims Eagle Picher Hourly Plan is no longer funded by Ross Aluminum and Eagle Picher Hourly Plan does not have an incentive to satisfy employees' claims. *Id*. at 5.

Conflicts of interest arise when the insurer funds and administers a plan governed by ERISA. *Ford v. Uniroyal Pension Board of Benefits and Awards,* 2005 U.S. Dist. LEXIS 23941, 11 (E.D. Mich. 2005).  According to the Plan, "The ***Committee*** will be the plan administrator and will be a named fiduciary under the Plan.  The Committee will consist of not less than three persons (who may be Hourly Employees) appointed by the Company." AR 61 (emphasis in original). As the name indicates, hourly employees are employees compensated on an hourly basis.  See AR., definitions.  Additionally, the Plan provides "All expenses incurred in the administration of the Plan *** will be paid from the Retirement Fund or by the Company, as the Company may elect." *Id*. at 63. Thus, even considering that the Committee is administered by Ross Aluminum Hourly Employees and Ross Aluminum funds the Retirement Fund, this Court hesitates to find a structural conflict of interest exists. Cf. *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 694 (6th Cir. 1989) ("The fact that the Retirement Committee that administers the plan is composed of management-level employees of KFC is significant only to the extent that any possible conflict of interest should be taken into account as a factor in determining whether the Committee's decision was arbitrary and capricious.").  There is no more conflict of interest here than when an independent insurance company administers a plan, but theoretically risks losing the contract if it grants too many awards.

6

Nonetheless, even assuming financial obligations and constructive control give rise to a conflict of interest, an examination of Sixth Circuit case law reveals Mr. Sharp's assertion is not sufficient to strip Eagle Picher Hourly Plan of arbitrary and capricious review.

> [M]ere allegations of the existence of a structural conflict of interest are not enough; there must be some evidence that the alleged conflict of interest affected the plan administrator's decision to deny benefits. *See Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998) ("Because our review of the record reveals no significant evidence that SummaCare based its determination on the costs associated with Mrs. Peruzzi's treatment…we cannot conclude that SummaCare was motivated by self-interest in this instance"); *see also Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1020 (7th Cir. 1998) ("We presume that a fiduciary is acting neutrally unless a claimant shows by providing specific evidence of actual bias that there is a significant conflict"); *Sullivan v. LTV Aerospace & Def. Co.*, 82 F.3d 1251, 1259 (2d Cir. 1996) ("[A] reasonable interpretation of the Plan will stand unless the participants can show not only that a potential conflict of interest exists,…but that the conflict affected the reasonableness of the Committee's decision") (internal quotation and citations omitted).

*Cochran v. Trans-General Life Ins. Co.*, 12 Fed. Appx. 277, 281-82 (6th Cir. 2001). Here, Mr. Sharp has failed to produce evidence indicating how the alleged conflict affected the administrator's denial of benefits. Consequently, this Court will apply the arbitrary and capricious standard when reviewing the administrative record.

2.    **Governing Law and Contract Terms**

Eagle Picher Hourly Plan is a "plan" governed by ERISA. *See* 29 U.S.C. § 1002. Mr. Sharp is a "participant" under ERISA. *See* 29 U.S.C. § 1002(7). Mr. Sharp seeks to enforce his rights and to recover benefits due to him under Eagle Picher Hourly Plan, as allowed by ERISA:

> A civil action may be brought…by a participant or beneficiary…to recover benefits due to her under the terms of her plan, to enforce her rights under the terms of the plan, or to clarify her rights to future benefits under the terms of the plan.

7

29 U.S.C. § 1132(a)(1)(B). The benefit with respect to which Mr. Sharp seeks clarification is his eligibility for disability benefits.

According to the Eagle Picher Hourly Plan, active hourly employees who meet the disability eligibility requirements will receive a disability benefit under the plan. AR 23. Eagle Picher Hourly Plan provides, in pertinent part,

> Disabled means [1] permanent and total incapacity by bodily injury or disease which commenced during a period in which the Hourly Employee was performing services for an Affiliate as an Hourly Employee *and* which has continued for a period of six (6) consecutive months *and* which prevents the Hourly Employee from engaging in any occupation or employment for remuneration or profit, except for the purposes of rehabilitation as determined by the Committee, [2] which entitles the Hourly Employee to a disability benefit under the U.S. Social Security Act, *and* [3] which was not contracted, suffered or incurred while the Hourly Employee was engaged in a criminal enterprise *or* which resulted from his habitual drunkenness or addiction to narcotics or from a self-inflicted injury or from services in the armed forces of the United States.

AR 24 (emphasis added). While one might construe this to include incapacitation from diseases that commence while employed, Eagle-Picher Hourly Plan interprets the provision to require incapatiation commencing while an Hourly Employee.

**3.      There is no evidence in the record demonstrating Mr. Sharp was determined to be disabled while performing services for Ross Aluminum September 13, 1996 through November 23, 1998. Therefore, the Committee was not arbitrary nor capricious in its decision to deny Mr. Sharp disability benefits.**

Eagle Picher Hourly Plan is requesting this Court to grant judgment on the administrative record. Eagle Picher Hourly Plan asserts Mr. Sharp was not actively employed by Ross Aluminum and is not eligible to receive disability retirement benefits. *Motion for Judgment on the Administrative Record at 5-6.* Additionally, Eagle Picher Hourly Plan claims Mr. Sharp did not suffer permanent and total incapacitation that commenced while actively employed. *Id.* at 5.

Lastly, Eagle Picher Hourly Plan argues Mr. Sharp did not become disabled until well over a year after the termination of his employment. *Id*. at 9.

Mr. Sharp also requests judgment as a matter of law. *Memorandum in Opposition to Motion for Judgment on the Record*; Doc. 24. Mr. Sharp claims he is entitled to receive disability benefits because the plain language of the Plan does not require the Social Security Administration to find the employee became disabled while an active employee. *Id.* at 5-6. Additionally, Mr. Sharp argues the administrative decision and the Committee added two additional requirements which resulted in the improper denial of disability benefits: 1) permanent and total incapacitation commenced during active employment; and 2) the Social Security Administration concluding the injury or disease must have resulted in permanent and total incapacitation during active employment. Thirdly, Mr. Sharp asserts the denial of benefits is arbitrary and capricious because providing disability benefits only when an employee is performing services for the company is irrational.

This Court finds the Plan Administrator was not arbitrary or capricious in denying Mr. Sharp's request for disability benefits. According to the Eagle Picher Hourly Plan, an employee is disabled when the employee experiences a permanent and total incapacitation by bodily injury that entitles the employee to benefits from the Social Security Administration and the injury was not received through any criminal enterprise or was the result of habitual drunkenness, addiction to narcotics, a self-inflicted injury, or services in the armed forces of the United States. AR 23-24. In the present case, Mr. Sharp suffered permanent and total incapacitation by bodily injury. He suffers from degenerative joint disease of the hip which has resulted in a total of three hip replacements. AR 253-255. Eagle Picher Hourly Plan rationally interprets the plan to require an employee to be an active hourly employee when he becomes disabled in order to qualify for

9

benefits. AR 23-24. Although Mr. Sharp claims he was injured two years ago when something fell and injured his left leg, there is no evidence in the record demonstrating this incident. Mr. Sharp admitted he did not file a worker's compensation claim when he was allegedly injured two years ago. AR 249. If Mr. Sharp filed an accident report regarding the incident in which something fell and injured his leg, it is not part of the administrative record. Therefore, there is no evidence from the administrative record that demonstrates Mr. Sharp was disabled during a period in which he was performing services for Ross Aluminum from September 13, 1996 through November 23, 1998. In the absence of evidence in the administrative record demonstrating Mr. Sharp became disabled while actively employed, this Court finds the Plan Administrator was neither arbitrary nor capricious when the administrator denied Mr. Sharp's request for disability benefits.

**B.    Defendant Ross Aluminum's *Motion to Dismiss*, Doc. 15, is sustained because Mr. Sharp stipulated to Ross Aluminum's dismissal.**

Ross Aluminum requests this Court to sustain its *Motion to Dismiss*, Doc. 15, claiming Ross Aluminum is not an appropriate party. Additionally, Ross Aluminum states the only allegation against Ross Aluminum is in paragraph three of the complaint and Mr. Sharp has not asserted a claim upon which relief may be granted pursuant to Fed. Civ. R. 12(B). The Plaintiff has stipulated to the dismissal of Ross Aluminum, Doc. 26. Consequently, Ross Aluminum's *Motion to Dismiss,* Doc. 15, is sustained.

**III.    CONCLUSION**

This Court finds there is no evidence demonstrating Mr. Sharp disabled while an actively employed by Ross Aluminum and the Committee did not arbitrarily in denying disability benefits. Therefore, Eagle Picher Hourly Plan's *Motion for Judgment on the Administrative*

*Record,* Doc. 11, is sustained.  Additionally, because Mr. Sharp stipulates, Ross Aluminum's *Motion to Dismiss,* Doc. 15, is sustained.  The instant matter is ordered terminated on the docket of the United States District Court Southern District of Ohio, Western Division at Dayton.

 **DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, March 29, 2006.


                                                                         s/Thomas M. Rose

                                                     _____
                                                                THOMAS M. ROSE
                                                     UNITED STATES DISTRICT JUDGE